## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| Timothy Park, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 15 CV 50218 |
| ) | Magistrate Judge Iain D. Johnston |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy Park brings this action under 42 U.S.C. §405(g), challenging the denial of social security disability benefits.

## BACKGROUND

On March 16, 2010, plaintiff filed disability applications alleging he was disabled because of back problems, which are not at issue in this appeal, and bipolar disorder. A hearing was held before an administrative law judge ("ALJ") who found that plaintiff was disabled from January 2010 through March 2011, but not thereafter. Plaintiff appealed administratively, and the Appeals Council remanded the case for several reasons.[1]

On remand, a new ALJ was appointed and then held a hearing. At the start of the hearing, the ALJ reminded plaintiff and his counsel that, even though the first ALJ had found plaintiff disabled for a 15-month period, the remand order provided that—in the ALJ's words—the "whole case is up for grabs." R. 11. Plaintiff's counsel acknowledged this risk.

Plaintiff, who was 52 years old, testified that he had only worked once in the last couple of years, which was a brief period as a package handler for UPS. He used to be an alcoholic but

---

[1] Neither side has raised any argument here relating to the ALJ's first decision or the Appeals Council's decision.

had been sober since 1997, a turn-around he credited to Alcoholics Anonymous ("AA"). He was living with his parents in Rockford. He was married once, but was divorced in 1997. His daughter was 20 years old and in college, and plaintiff had a "distant" relationship with her. R. 13.

The key issue in this appeal is plaintiff's alleged periods of decompensation when his symptoms worsened. Plaintiff testified that he had good days and bad days. If he had energy, he would go to "out to an AA meeting or something like that" and then would do things like reading and spending time on the computer. R. 18. But if he were "really depressed," then he would not do "much of anything" unless "prodded by" his parents. *Id.* He would then do things like reading and would "stumble through day" without the "initiative to do much of anything." R. 19. The bad days happened "only about four or five days" every month or two. R. 19, 22.

The ALJ called Dr. Michael Carney, a psychologist, to testify as an impartial medical expert. He noted that plaintiff had been diagnosed "pretty much consistently throughout the record" as having bipolar II disorder. R. 14. He found that plaintiff had only mild limitations in activities of daily living and social functioning, noting that plaintiff did various activities such as driving, using a computer, reading, cooking, attending church, and going to AA meetings. He acknowledged that plaintiff procrastinated and had "an ongoing concern about lack of motivation and planning," but did not find that these problems were severe. R. 16.

On April 14, 2014, the ALJ found plaintiff not disabled for any period of time. The ALJ found that plaintiff had the following severe impairments: "bipolar disorder, personality disorder, and history of alcoholism in sustained remission." R. 92. The ALJ found that plaintiff did not meet any of the Section 12 mental health listings, and that he had the residual functional capacity to perform the full range of medium work. The ALJ's rationales are discussed below.

**DISCUSSION**

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

Plaintiff raises three arguments for a remand. Each relates to a different opinion provided by his therapist, Jennifer Crotchett, and his psychiatrist, Dr. Anthony D'Souza, who were "coordinating closely over [his] care" at Rosecrance. Dkt. #11 at 9. As will be seen, all three opinions are offered for the same basic point about periods of decompensation.

Before addressing each argument individually, a broader point should be noted. In his opening brief, plaintiff offers only skeletal arguments. They are conclusory, with minimal citations to the record or discussion of the facts, and little explanation of the legal tests or case

3

law. The most detailed discussion of the specific evidence is in the introduction and fact section, which take up six and a half pages of the 10-page brief. However, later in the brief, plaintiff never marshals these facts and connects them to the relevant legal tests. Compounding these problems, plaintiff did not to file a reply brief despite being given ample time to do so. Accordingly, the Government's counter-arguments are left unaddressed. For these reasons, this Court arguably could deny these arguments summarily on the ground that they are undeveloped. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel"); *Baker v. Colvin*, 2015 WL 719604, *4 (N.D. Ill. Feb.18, 2015) ("undeveloped" arguments, which rely on "passing references" to legal rules "without providing any substantive support," are deemed waived). However, rather than rely on this ground, this Court will consider these arguments on the merits.

Plaintiff's first argument is that the ALJ ignored Ms. Crotchett's one-paragraph "To Whom May It Concern" letter dated February 17, 2013. Dkt. #11 at 7. Ms. Crotchett, along with Dr. D'Souza, began treating plaintiff sometime around January 2010. R. 727. It is not clear how many times plaintiff was seen by them. In his brief, plaintiff states that Ms. Crotchett has been involved with his case "for at least two years." Dkt. #11 at 9. As for the substance of the opinion letter, Ms. Crotchett made several assertions, but the one plaintiff focuses almost exclusively on is that he "experiences some variances in his functioning" when "he is not able to complete his Activities of Daily Living" and that these "periods last for 1-2 weeks" and occur "once every 2-3 months." R. 562. These were referred to as periods of decompensation, and Ms. Crotchett opined they "likely" would interfere with plaintiff's ability to work. *Id.*

Plaintiff's argument is simple. He claims the ALJ completely "ignored" this letter, not discussing it "at all." Dkt. #11 at 7, 9 ("Given that the ALJ failed to address the opinion at all, this case should be remanded for further evaluation."); *id.* at 8 (asserting that the ALJ "failed to even mention Ms. Crotchett's opinion"). Plaintiff speculates that the ALJ may have ignored the letter because Ms. Crotchett was not a "treating source" under the treating physician rule. But there is no need to speculate about this possibility because plaintiff's argument can be dispensed with quickly. As the Government correctly argues, plaintiff is incorrect that the ALJ ignored this letter. Although the ALJ did not refer to Ms. Crotchett by name, the ALJ indisputably considered this letter, referring to it by its exhibit name and date. The ALJ analyzed this letter, together with the October 2013 opinion letter discussed below, in a long paragraph at page 8 of the opinion (R. 94) and offered several reasons for why they both deserved little weight. By not filing a reply brief, plaintiff implicitly acknowledges that the Government is correct. Plaintiff's first argument is thus a non-starter.

Plaintiff's second argument addresses "Dr. D'Souza's opinion from October of 2013." Dkt. #11 at 9. Although plaintiff did not provide a record cite to this document, based on the Government's brief, plaintiff appears to be referring to the six-page "To Whom It May Concern" letter, which was in fact jointly signed by *both* Dr. D'Souza *and* Ms. Crotchett.[2] R. 573-578. In this letter, Dr. D'Souza and Ms. Crotchett, reiterated the same points, albeit at greater length, made in the February 2013 letter. Plaintiff again focuses on the finding about periods of decompensation. Plaintiff does not claim that the ALJ totally ignored the opinion, but he argues that the ALJ failed to "properly" evaluate it. However, plaintiff again ignores the long paragraph on page 8 of the opinion where, as noted above, the ALJ offered multiple reasons for discounting these two opinions. Instead, plaintiff only references a later (and shorter) paragraph on page

---

[2] Ms. Crotchett is listed as the contact person who should be called if there are any questions. R. 578.

eleven (R. 97), where the ALJ also referred to this letter. So again, plaintiff's argument overlooks a key part of the ALJ's opinion. The upshot is that plaintiff does not grapple with the specific explanations offered by the ALJ. Other than offering a conclusory statement that he was "easily overwhelmed" and had fluctuating "periods of anxiety and irritability," plaintiff never discusses the specific evidence in the record. Dkt. #11 at 9.

Plaintiff makes one other argument about the October 2013 opinion. In a one-paragraph argument, plaintiff asserts that the ALJ failed to apply the checklist of factors under the treating physician rule. 20 C.F.R. §404.1527(c)(2); *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014).[3] This argument rests on firmer ground than the others. It is true that the ALJ did not explicitly apply the checklist under step two of this rule, nor did the ALJ conduct the step one inquiry into whether this opinion deserved controlling weight. The ALJ should have followed these steps.[4] The ALJ's failure to do so normally would be a basis for remanding this case, as this Court has often concluded. However, in this case, the Court chooses to *sua sponte* invoke the harmless error doctrine because the Court is confident that remand on this issue is not necessary. *Alvey v. Colvin*, 536 Fed. Appx. 792, 794 (10th Cir. 2013); *Smith v. Colvin*, 2015 U.S. Dist. LEXIS 33462, at *11 n. 2 (W.D. Okl. Feb. 23, 2015).

Although plaintiff complains that the ALJ did not explicitly apply the checklist factors, he fails to make a case for why application of these factors could arguably lead to a different result. Plaintiff refers to only one of the six factors (the fourth one addressing "consistency of the opinion with the record as a whole") and then only provides the following conclusory argument, which is quoted in its entirety: "As a whole, the records support that Mr. Park has periods of

---

[3] The factors are: (1) the length of treatment; (2) the nature and extent of the treatment relationship; (3) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's degree of specialization; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).
[4] The Appeals Council, in its remand order, specifically instructed the ALJ to follow this rule. R. 84.

fluctuating behaviors and displays of symptoms." Dkt. #11 at 10. This sentence is merely a barebones conclusion. It is not accompanied by citations to the record or discussion of the evidence or engagement with the ALJ's specific reasons. As noted above, it is not this Court's job to construct an argument by filling in the missing evidentiary foundation.

As the Government notes, the ALJ explained (in that long paragraph on page 8) why both opinions were not consistent with the other evidence. He offered at least five reasons. First, the opinions were undermined by the "consistently average appearance and functioning during [plaintiff's] appointments from 2010 through 2013." R. 94 (citing Exs. 1F, 2F, 3F, 10F, 14F, 16F, 17F, 20F, 21F, 22F). Second, plaintiff's GAF scores were "consistently assessed from 50 – 59 from January 2010 through January 2013," which indicated "no more than moderate interference with functioning." *Id.* Third, plaintiff did not require inpatient treatment for the alleged one-to-week periods, and he was not always compliant with taking his medications. Fourth, plaintiff's allegation of doing "absolutely nothing" during these down periods was in conflict with treatment notes suggesting he had an active lifestyle.[5] Fifth, Dr. D'Souza never recorded a change in appearance or functioning during his visits with plaintiff.

---

[5] Plaintiff's active lifestyle was a point of emphasis, as the ALJ referred to it often. *See* R. 94 ("he is an avid blacksmith and [] participates in historical reenactments and various other activities in the community"); R. 96 (plaintiff "often traveled to Madison or Milwaukee to spend time with his paramours and he was selling items on EBay and creating sculptures to sell for cash"); R. 98 ("In 2010, without the benefit of medication, the claimant described his days to include walking the dog, making things in his shed, attending reenactments, and multiple Alcoholics Anonymous meetings each week. He was an active member of the church and maintained friendships across state lines.") (citations omitted); R. 98 ("coordinate[s] AA meetings"); R. 99 ("he maintains a very active social life without significant difficulty"). In fact, plaintiff complained to his therapist at one point that he had "so many irons in the fire." R. 382. To illustrate this point, the Court quotes the following description that plaintiff himself gave in describing a typical day:

> Wake up anywhere from 7:30am – 8:30 am. Have coffee, take shower read. Take meds – mornings are "foggy." Try to remember to walk the dog. Sometime, I will sit around for about 2 hours – sometimes I can have more energy, motivation. Go out to workshop in shed and make things from wood & metal. Some household chores. Eat lunch around 11 am – Go to AA mtgs at noon – a few times a week. After meetings – some days back in work shop again – maybe reading or writing for a while, websurfing on internet. Attend church mtgs as available. Eat dinner around 6 pm, maybe attend mtg, sewing, needlework, hobbies. Go to bed around 11 pm – if able to sleep.

Plaintiff has not disputed these points. He has not identified any factual inaccuracies in the ALJ's recitation of the evidence, or pointed to other evidence the ALJ ignored (other than the mistaken claim about the February 2013 opinion letter). Plaintiff's brief narrowly focuses on only a few documents (*i.e.* the three opinions), and ignores large chunks of the 743-page medical record. The ALJ summarized much of this evidence elsewhere in the opinion. It includes opinions of other healthcare providers such as therapist Mary Fairchild, who saw plaintiff sixteen times, in 50-minute sessions, from October 2010 until March 2011 and concluded that plaintiff's condition was "stabilized and functioning adequately" with a GAF of 51(Ex. 14F); consultative examiner Dr. John Peggau who prepared a four-page report summarizing plaintiffs many activities (Ex. 18F); Dr. Kuester, the State Agency consultant (Exs. 4F, 5F); and Dr. Carney, who testified that, despite some problems with procrastination and fluctuating moods, plaintiff did not have any "severe symptomatology" (R. 16).

Ultimately, plaintiff's argument for remand relies on a single contention—namely, that he had what were essentially stealth periods of severe depression lasting one to two weeks that were not observed by any healthcare provider or documented by any examination finding. Plaintiff seems to have realized at the hearing that this allegation was subject to this criticism, as he volunteered the following proactive explanation: "usually the timing has been that I've been feeling pretty good when my visits [to doctors] are hitting." R. 22. In other words, plaintiff seems to be suggesting that it was merely coincidence (*i.e.* bad luck) that his visits never took place during any down periods. Plaintiff's counsel likewise recognized this weakness when he asked Dr. Carney whether plaintiff's moderate GAF ratings were perhaps only assessed during plaintiff's good periods. Dr. Carney acknowledged that it was "possible" plaintiff only had his

---

R. 293. The Court is aware that this may represent one of plaintiff's "good days," but it still conveys a sense of plaintiff's overall lifestyle and activities.

bad "mood swings" in the "intervals" between doctor visits, but he seemed skeptical of this conclusion and stated that he was still believed that plaintiff's depression was not severe enough to find him disabled. R. 23. This is not a case where the plaintiff received only sporadic treatment. As noted above, he saw several therapists regularly over a multiple year period. For example, he saw Ms. Fairchild sixteen times in almost-weekly intervals for six months; yet she never mentioned in her opinion letter that plaintiff had suffered these types of two-week decompensation periods. Finally, as for plaintiff's repeated assertion that his symptoms fluctuated, with good and bad periods, this begs the question of *how severe* the fluctuations were. Almost everyone experiences some ups and downs in both their daily life and over their larger lifespan. In this case, the ALJ, along with the testifying expert, acknowledged plaintiff's fluctuations, but concluded that, on balance, the evidence did not show that they would prevent him from working. For all the above reasons, despite the ALJ's error in not explicitly applying the checklist, the Court concludes that a remand is not warranted. Nevertheless. the Court, once again, admonishes the ALJ to properly follow the regulations, including those relating to the treating physician rule.

Plaintiff's third and final argument is that this case should be remanded under Sentence Six of § 405(g) based on new evidence. The new evidence is yet another opinion letter jointly signed by Ms. Crotchett and Dr. D'Souza. Ex. 26F. It is a one-page letter dated April 8, 2015, which was submitted to the Agency almost a year after the ALJ issued his decision.

As plaintiff recognizes, a Sentence Six remand is allowed where "there is evidence that is new and material, plus a showing of 'good cause' for the failure to incorporate such evidence into the record in a prior proceeding." *DeGrazio v. Colvin*, 558 Fed. Appx. 649, 652 (7th Cir.

9

2014); *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003). Here is plaintiff's entire argument for meeting these three requirements:

> Dr. D'Souza's 2015 opinion supports, again, that there is consistency in Mr. Park's periods of decompensation, despite frequent treatment. Dr. D'Souza's opinion has not changed over the course of the last couple of years, indicating that it is not likely to change in the future.

Dkt. #11 at 10. This two-sentence argument fails to meet these requirements. Plaintiff provides no explanation for why the opinion was not obtained earlier. Moreover, as the Government notes, the 2015 letter adds "nothing new" to the earlier letters, and even suggests plaintiff was "actually doing better."[6] Dkt. #16 at 7. This Court agrees. Plaintiff implicitly concedes the evidence is not new when he states that it is offered to "again" establish the allegation about periods of decompensation. It is not clear why the third time would be the charm. Plaintiff suggests this letter would show that his condition did not improve *after* the decision was issued, but this is not particularly relevant to plaintiff's condition *before* that decision.

## CONCLUSION

For these reasons, plaintiff's motion for summary judgment is denied, the government's motion is granted, and the decision of the ALJ is affirmed.

Date: December 15, 2016  By: _____
Iain D. Johnston
United States Magistrate Judge

---

[6] It is also not clear whether the limitations stated in this letter—missing one day of work a month and struggling with concentration 20 minutes each workday—would preclude plaintiff from all jobs. R. 729.